IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN L. BOYD, :
:
        Plaintiff, :
: CIVIL NO. 3:CV-06-1359
        v. :
: (JUDGE VANASKIE)
UNITED STATES OF AMERICA, et al., :
:
        Defendants. :

## MEMORANDUM

Background

    John L. Boyd, an inmate presently confined at the Hazelton United States Penitentiary, Bruceton Mills, West Virginia (USP-Hazelton), proceeding pro se, filed this civil rights action pursuant to 28 U.S.C. § 1331. Service of the Complaint was previously ordered.

    Named as Defendants are the United States of America; Regional Director D. Scott Dodril and Regional Designator E.L. Tatum of the Northeast Office of the Federal Bureau of Prisons (BOP); and the following staff members at his former place of confinement, the Allenwood United States Penitentiary, White Deer, Pennsylvania (USP-Allenwood): Warden Troy Williamson; Health Services Administrator Ronald Laino; Case Manager Todd Burke; Counselor Jeffrey Troutman; Unit Team Coordinator Mark Tanner; Special Investigative

Services (SIS) Officers S. Valin[1] and Steven Valenicik (identified in the Complaint as S. Vellolliah); Lieutenant Cory Heath; Unit Team Managers Timothy Noone and Donn Troutman; as well as eight (8) John Doe Correctional Officers.

Boyd states that he arrived at USP-Lewisburg on or about December 5, 1994. (Dkt. Entry # 1, Section IV, ¶ 7.)[2] On December 17, 2003, Boyd allegedly discovered that his progressive Glaucoma was not being properly treated. His Complaint contends that between April, 2004 and August, 2005, he was subjected to retaliation for filing prison grievances, administrative remedies, and a civil rights action challenging his ophthalmic care. The initial retaliatory act occurred on or about April 29, 2004 when he was issued a false incident report by Defendant Laino which accused him of having unauthorized contact with the public. (Id. at ¶ 12.) Plaintiff next claims that there was an unwarranted shakedown search of his cell and improper confiscation of his family photographs on June 9, 2004. (Id. at ¶ 13.) The next day, Plaintiff allegedly underwent an unnecessary personal search in the prison yard. (Id. at ¶ 14.) On February 28, 2005, Lieutenant Heath purportedly ordered Boyd to leave the dining hall

---

[1] Defendants indicate that this individual could not be identified.

[2] For the convenience of the reader of this Order in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

before the inmate was afforded an opportunity to eat his breakfast.  (Id. at ¶ 15.)

After Defendant Troutman informed Heath that Plaintiff was intending to file a grievance regarding the dining hall incident, additional retaliation occurred.  Specifically, on March 1, 2005, another unwarranted shakedown search of Plaintiff's cell and confiscation of personal property items occurred.  According to the Complaint, Defendant Dodrill retaliated against Boyd on May 24, 2005 by rejecting his "sensitive" administrative grievance.  (Id. at ¶ 18.)  Finally, on August 17, 2005, numerous Defendants allegedly altered Boyd's custody classification level.  As relief, Plaintiff seeks compensatory damages and an institutional transfer.

Defendants have filed a Motion for Summary Judgment premised on Boyd's failure to exhaust administrative remedies prior to seeking judicial relief.  (Dkt. Entry # 18.)  Thereafter, Plaintiff's request to temporarily hold his case in abeyance due to his recent transfer to another facility for the purpose of giving a deposition in another matter was granted.  (Dkt. Entry # 28.)

After Boyd advised this Court that he was "medically transferred" to USP-Lewisburg and did not have access to his legal or personal property, this Court issued an Order (Dkt. Entry # 31) directing the Clerk of Court to reinstate this action to the active docket and ordering Defendants to re-serve Plaintiff with a copy of their motion for summary judgment, supporting exhibits, statement of facts and brief.  In addition, Plaintiff was granted thirty (30) days from the date of service of those documents to file his opposition to Defendants' motion for summary judgment.

By Order dated April 25, 2007, this Court again stayed proceedings in this matter and administratively closed the case pending notification by Plaintiff that he was in receipt of his legal materials. (Dkt. Entry # 35.) On August 3, 2007, this matter was restored to the active docket and Plaintiff was granted a further extension of time in which to oppose the summary judgment motion. (Dkt. Entry # 38.) Briefing has been completed, and the motion for summary judgment is ripe for consideration.

Discussion

Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the

-4-

claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).

Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Administrative Exhaustion

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001); see also Porter v. Nussle, 534 U.S. 516, 529-532 (2002). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)). Moreover, "[t]here is no futility exception" to the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002); Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006)(rejecting prisoner's argument that exhaustion should be excused because inmate grievances were regularly rejected.)

The Federal Bureau of Prisons (BOP) has a well established three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19. After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20) calendar days "following the date on which the basis for the Request occurred." See 28 C.F.R. § 542.14(a) (1998). The Warden has twenty (20) calendar days from the filing of the BP-9 in which to respond. Id. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response. Id. at § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

An affidavit submitted under penalty of perjury by USP-Allenwood Attorney Advisor Adam Ackley acknowledges that Plaintiff filed an administrative appeal of the Unit Disciplinary Committee (UDC)'s finding that he had unauthorized contact with the public as alleged in a misconduct report prepared by Health Services Administrator Laino. (Dkt. Entry # 23-2, Exhibit 1, ¶ 5.) Plaintiff's appeal argued violation of his due process fights on the grounds that he had not been provided with a hearing and the evidence presented did not support the UDC's finding of guilt. Following an appeal to the BOP's Northeast Regional Office, the disciplinary action was remanded for further review and rehearing if necessary.

Ackley further states that Plaintiff attempted to file a "sensitive grievance" alleging "staff retaliation" at the BOP's Regional Level on May 18, 2005. (Id. at ¶ 11.) Boyd's submission was rejected on May 24, 2005 on the basis that the issues being grieved were not sensitive.

According to Ackley, Boyd "failed to file any more administrative remedies regarding any issue presented in this lawsuit." (Id. at ¶ 12.)

Documents accompanying Ackley's declaration provide that Plaintiff submitted thirty-nine (39) administrative requests while in BOP custody. (Id. at Attachment D, p. 57.) Eighteen (18) of those requests predate the relevant time period of this action, while nine (9) grievances were filed in 2006 and regard events which transpired after conclusion of the period of alleged retaliation. During the relevant time period and in addition to his successful challenge of the UDC's finding of guilt and submission of a sensitive grievance which was subsequently rejected as being non-sensitive, Boyd also filed administrative grievances relating to his medical care (2), dental treatment (3), and calculation of his good time credits (3), issues which are not pertinent to the matters presently pending before this Court.

In his counter statement of material facts, Plaintiff concedes that he is familiar with the BOP administrative remedy system. (Dkt. Entry # 48, ¶ 1.) He points out that the misconduct charge issued by Laino was expunged from his record on August 18, 2004. (Id. at ¶ 7.) Boyd adds that after his transfer to the United States Penitentiary, Pollock, Louisiana, he initiated a grievance on October 3, 2005 regarding all the issues asserted in this lawsuit. (Id. at ¶ 11.)

Boyd contends that since the misconduct charge levied by Defendant Laino was expunged after his successful administrative appeal, any claim relating to the issuance of said disciplinary charge should be deemed exhausted. With respect to his remaining claims,

Plaintiff asserts that since he sought administrative relief with respect to those allegations via both a sensitive administrative grievance and a non-sensitive grievance following his arrival at USP-Pollock, those claims should not be precluded from consideration on the basis of non-exhaustion.

It is undisputed that the UDC issued a finding of guilt with respect to a disciplinary charge for unauthorized contact with the public. Plaintiff filed an administrative appeal contending that the UDC failed to provide him with a hearing and that there was insufficient evidence to support the charge. See Dkt. Entry # 47, Attachment 2, Exhibits 1-4. By Notice dated August 19, 2004, the disciplinary charge was expunged. (Id. at Exhibit 4.) Significantly, Plaintiff's administrative appeal to both the USP-Allenwood Warden and the BOP's Northeast Regional Office did not make any claim that the misconduct was issued in retaliation for the exercise of First Amendment rights. See id. at Exhibits 2 & 3. Although Plaintiff's retaliation claim against Laino stemmed from the same nucleus of facts, the retaliation claim was never presented through the administrative remedy process. It thus follows that Boyd did not exhaust administrative remedies with respect to the retaliation claim against Laino.

Boyd next contends that he complied with the exhaustion requirement because all of his pending assertions of retaliation were included in a sensitive grievance dated May 16, 2005 which he submitted directly to the BOP's Northeast Regional Office. Although Plaintiff's sensitive grievance included all of Plaintiff's pending retaliation claims, see id. at Exhibit 9, it is

undisputed that the BOP's Northeast Regional Office concluded that Boyd's claims were not sensitive, rejected his submission, and advised him to pursue relief via the regular grievance procedure. The Notice elaborated that there was no indication that Boyd attempted informal resolution of his allegations, and that his issues should first be addressed by the USP-Allenwood Warden via a regular, non-sensitive grievance. See id. Boyd declined to do so. Rather, he waited until he was transferred to another federal correctional facility, USP-Pollock, to reassert his retaliation claims via a regular grievance.

Plaintiff asserts that the grievance which was initiated following his transfer to USP-Pollock satisfied the exhaustion requirement. Officials at USP-Pollock, however, rejected Boyd's grievance as untimely on October 4, 2005. (Id. at Attachment 3.) The USP-Pollock response noted that Plaintiff had failed to demonstrate a valid reason for his delay in seeking administrative relief. It was also noted that the grievance was subject to rejection because it asserted multiple unrelated issues on a single form. The rejection was upheld following an appeal to the BOP's South Central Regional office. See id. at Attachment 5.

The statutory mandate for exhaustion of administrative remedies implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004). As our Court of Appeals explained, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id.

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court reiterated that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations.

Plaintiff elected to assert his pending retaliation claims in a sensitive grievance, a procedure which allowed him to bypass consideration of his allegations at the institutional level. The rejection of Boyd's sensitive grievance with instruction that his issues should be pursued via a non-sensitive grievance initiated through the normal BOP administrative remedy procedure did not exempt Plaintiff from complying with the exhaustion requirement. Boyd has not come forward with any facts which could reasonably explain his refusal to present his claims before the USP-Allenwood Grievance Coordinator and Warden. There is no indication that either the USP-Allenwood Grievance Coordinator or Warden, the prison officials who perform the first two administrative reviews of his claims, previously engaged in any retaliatory conduct directed towards the Plaintiff. Consequently, any claim that seeking review would subject him to additional retaliation is wholly speculative. More importantly, the Court of Appeals for the Third Circuit has "not recognized 'sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110,113 (3d Cir. 2008).

Once his request to file a sensitive grievance was rejected, Boyd should have pursued relief via the normal administrative review procedure. Plaintiff's realization of the procedural

-11-

default of his retaliation claims is evidenced by his subsequent initiation of a similar, albeit untimely, grievance after arriving at USP-Pollock.

This is not a case where exhaustion was prevented because the prisoner was tripped up by a technical procedural requirement. Rather, the undisputed facts clearly show that this is simply a case where a prisoner made a conscious, ill-advised decision to bypass consideration of his retaliation claims at the institutional level. Boyd has not established a viable reason for his decision to bypass administrative review at USP-Lewisburg. Since Plaintiff's own deliberate conduct prevented timely review of his administrative claims while housed at USP-Allenwood, entry of summary judgment in favor of Defendants on the basis of non-exhaustion is appropriate.

                                                s/ Thomas I. Vanaskie
                                                Thomas I. Vanaskie
                                                United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN L. BOYD, :
:
        Plaintiff, :
: CIVIL NO. 3:CV-06-1359
    v. :
: (JUDGE VANASKIE)
UNITED STATES OF AMERICA, ET AL., :
:
        Defendants. :

ORDER

    NOW, THEREFORE, THIS 30th DAY OF NOVEMBER, 2009, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

    1. Defendants' motion for summary judgment (Dkt. Entry # 20) is GRANTED.

    2. The Clerk of Court is directed to enter judgment in favor of Defendants ant to mark this matter CLOSED.

                              s/ Thomas I. Vanaskie
                              Thomas I. Vanaskie
                              United States District Judge